Filed 10/24/19; Certified for Publication 11/13/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT KIEN TRAN,<br><br>    Defendant and Appellant. | D074605<br><br><br>(Super. Ct. No. SCN370370) |


APPEAL from a judgment of the Superior Court of San Diego County, Michael D. Washington, Judge. Affirmed.

Law Office of Scott M. Schlegel and Scott M. Schlegel, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Robert Tran of reckless driving, in violation of Vehicle Code section 23103, subdivision (a). Tran was sentenced to three years' probation with 30 days in custody.

Tran appeals, contending the trial court erred in denying his pretrial motion to suppress evidence obtained from the warrantless search of his backpack and seizure of his dashboard camera. Tran claims exigent circumstances did not exist; thus, law enforcement was not excused from first obtaining a warrant.

After reviewing the parties' briefs and the record in this matter, we determined the primary issue presented was whether the seizure of Tran's dashboard camera was constitutional. Therefore, we requested the parties submit letter briefs addressing the following issue: "[W]hether exigent circumstances allowed for the warrantless seizure of [Tran's] dashboard camera under *United States v. Place* (1983) 462 U.S. 696 [(*Place*)]." We requested such supplemental briefing because we were satisfied that the evidence proffered at the hearing on Tran's motion to suppress was fully developed to analyze the constitutionality of the seizure of the dashboard camera and no additional evidence was needed. As such, we did not deem our request to violate *Green v. Superior Court* (1985) 40 Cal.3d 126. (See *id*. at pp. 137-138 [acknowledging that California courts "refused to allow the prosecution to assert a new theory on appeal to support or defeat the trial court's suppression ruling" but noting that such a restriction may not apply if the new theory is supported by the record in the suppression hearing and no additional evidence is needed].) However, in an abundance of caution, we informed the parties that if they did

2

not believe the record was sufficiently developed to address the question presented, they could make that argument in their supplemental briefs and detail what additional evidence was needed.

We received supplemental letter briefs from the parties. Neither party took the position that additional evidence was needed to address the issue raised in our order. After reviewing the supplemental briefing, the record, and the original briefs, we conclude the seizure of the dashboard camera did not run afoul of the Fourth Amendment of the United States Constitution. Consequently, we find the trial court did not err in denying Tran's motion to suppress, and we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The issue before us concerns the trial court's denial of Tran's motion to suppress evidence. As such, we eschew the typical discussion of the underlying facts of Tran's offense, and instead, focus on the evidence offered at the hearing on Tran's motion to suppress.

In November 2016, Tran was involved in a vehicular collision with a motorcycle when his vehicle crossed a double yellow line on a sharp curve in the road. At the time of the accident, the motorcycle rider sustained serious injuries, and it was believed that he could die from those injuries.

Before his trial, Tran filed a motion under Penal Code section 1538.5 to suppress the search of the backpack[1] and the seizure of the dashboard camera. At the hearing on the motion, California Highway Patrol Sergeant Brad Palmer was the only witness. Palmer testified that during the 30 to 45-minute drive to the scene, he was informed that the collision involved a potential fatality and the motorcycle rider was being airlifted to a trauma center. Once at the scene, medical personnel informed Palmer that the victim would likely die from his injuries. Palmer testified that he observed tire friction marks on the roadway providing evidence that Tran had drifted into the other lane of traffic on a two-lane roadway as he attempted a very sharp right turn. The friction marks from the vehicle indicated Tran was traveling at a high rate of speed before the collision.

At the site of the accident, Officer Gilbert Ontiveros briefed Palmer. Ontiveros explained that, based on the tire friction marks, scuffing on the exterior sidewalls of the vehicle's left side tires, and witness statements, Tran's vehicle was traveling at a high rate of speed in a reckless manner. A witness to the accident told Palmer that he estimated Tran's speed before the curve was between 35 and 40 miles per hour.

Ontiveros also told Palmer that Tran had removed a dashboard camera from his vehicle. Palmer testified that in his experience with dashboard cameras, they are breakable and easily hidden. He further added that, at the time, he thought he was investigating a potentially fatal collision caused by a reckless driver, traveling at a high-speed, colliding with a motorcycle after crossing into the opposing lane.

---

[1]     In their motion to suppress briefs, the parties focused on the constitutionality of the seizure of the camera, not on the search of the backpack.

When Palmer contacted Tran at the scene, Tran had a backpack on the ground near him. Palmer initially asked Tran if he was okay. Then he asked him if he had a dashboard camera. Tran admitted he had one. Palmer then asked Tran if he had removed the camera from his vehicle, and Tran stated that he had. Palmer next asked Tran where the camera was. At the hearing on the suppression motion, he explained that he asked this question because he was concerned about "exigent circumstances." Palmer believed he "needed to get that dashboard camera because it had evidence, and [he] was concerned with the little SD cards that could be in it. It could be destroyed by putting your fingers in your pockets. It could be chucked. It could be stepped on."

Tran told Palmer that he had the camera, and it was in his backpack. Palmer asked Tran if he had any weapons in his backpack. Tran told the sergeant that he had a "fixed-blade-type knife" in his backpack. Palmer then asked Tran to get the camera for him but to make sure he did not grab the knife. Although Tran eventually agreed to get the camera, Palmer described Tran as "very slow to" get the camera, like it appeared that he "didn't really want to."

Tran ultimately retrieved the dashboard camera from his backpack and then Palmer said that he was going to seize the camera because it "ha[d] evidence of [Tran's] driving." Palmer explained that Tran "didn't really want to give [the camera] to [him]" and asked about the sergeant's authority to take the camera. Seeing Tran's hesitation, Palmer warned him that if he did not turn over the camera he would be "obstructing this investigation." Although Tran "kind of hemmed and hawed about it[,]" he eventually gave the camera to Palmer.

5

The prosecutor probed Palmer's reasoning for seizing the camera without a warrant through the following exchange:

"Q      Let me ask you this:  Why did you not get a warrant before seizing that camera?

"A      My—my thinking was I needed to get it right then. Because that—he told me it was in the backpack.  But also, I've been lied to before.  And if it wasn't in the backpack—and if I take the backpack and get a warrant or if I do a warrant there at that point, it could have been in his back pocket, the SD card broken; in his front pocket, the SD card broken; or maybe with his wife, broken.  [¶]  So the longer length of time it took, that that evidence could have been destroyed or removed or thrown down the mountain or stomped on or anything of that nature.  So my immediate aspect was I needed to find that dashboard camera right now because of the circumstances and the type of offense we were investigating.

"Q      Did you feel, based on what you knew from talking with Officer Ontiveros and hearing that that camera was at one point potentially in the car and the defendant removed it and the fact that it was not in a backpack, did you feel like the defendant was trying to conceal that?

"A      Yeah.  I mean, if there was no evidence, that would have been of, in essence, kind of guilt or have evidence against a person, then they wouldn't be taking evidence from something and trying to conceal it.  For that reason, I thought there was definitely evidence on that device that was going to be destroyed or removed, or it wouldn't have been removed or destroyed in the first place or concealed in a backpack or not in their hand and, in essence, trying to hide it from us."

Palmer gave the dashboard camera to Ontiveros and instructed him to obtain a search warrant for the contents of the dashboard camera before viewing the content on it. Three days later, a search warrant was obtained to view the contents of the camera.

Tran was not arrested on the day of the collision.  A warrant for Tran's arrest was issued in March 2017, over four months after the accident.

6

After hearing Palmer's testimony as well as argument from the parties at the hearing on the motion to suppress, the court took the matter under submission. In a subsequently issued written order, the court denied the motion. Tran timely appealed.

DISCUSSION

"Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118; see Cal. Const., art. I, § 28, subd. (f)(2).) "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*Lenart*, at p. 1119.)

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." (U.S. Const., 4th Amend.; accord, Cal. Const., art. I, § 13.) "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness." ' [Citation.]" (*Riley v. California* (2014) 573 U.S. 373, 381-382.) Reasonableness " 'is measured in objective terms by examining the totality of the circumstances' [citation], . . ." (*People v. Robinson* (2010) 47 Cal.4th 1104, 1120.) The burden is on the prosecution to provide some justification for the warrantless search or seizure. (*People v. Williams* (1999) 20 Cal.4th 119, 136.)

7

Here, we are not concerned with a search, but instead, a seizure. A seizure is "far less intrusive than a search." (*United States v. Payton* (9th Cir. 2009) 573 F.3d 859, 863 (*Payton*).) Whereas a search implicates a person's right to keep the contents of his or her belongings private, a seizure only affects their right to possess the particular item in question. (*Segura v. United States* (1984) 468 U.S. 796, 806 (*Segura*).) Consequently, the police generally have greater leeway in terms of conducting a warrantless seizure than they do in carrying out a warrantless search. The United States Supreme Court has "frequently approved warrantless seizures of property . . . for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been impermissible." (*Ibid.*)

In *Place*, the United States Supreme Court addressed the warrantless seizure of a container (i.e., luggage). In that case, federal agents met a suspicious airline passenger at his destination and asked to search his luggage. (*Place*, *supra*, 462 U.S. at pp. 698-699.) When the passenger refused, the agents seized his bags and transported them to another location for a "sniff test" by a narcotics detection dog. Ninety minutes later, the test was performed, and the dog alerted to one of the bags, whereupon the agents obtained a search warrant, opened the bag, and discovered cocaine. (*Id.* at p. 699.) The high court held that the officer's reasonable suspicion justified an investigative detention of the luggage and that the canine sniff did not constitute a search under the Fourth Amendment. (*Id.* at pp. 706-707.) But the court also held that the 90-minute detention of the suspect's luggage to conduct the sniff test exceeded the permissible scope of the investigative detention. (*Id.* at pp. 709-710.)

In setting forth the applicable principles, the court explained: "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." (*Place*, *supra*, 462 U.S. at p. 701.) In other words, exigent circumstances can justify the seizure of a container without a warrant, but the container, once seized, cannot be searched without "issuance of a warrant to examine its contents." (*Ibid*.)

Here, like the luggage in *Place*, the dashboard camera is a type of container. It contains digital images. And, again, like the luggage in *Place*, the camera was seized without a warrant, but searched pursuant to one. Thus, we asked the parties to address the seizure of the dashboard camera under *Place*, *supra*, 462 U.S. 696. Not surprisingly, they disagree whether the seizure here was constitutional. Their primary disagreement revolves around the belief that there existed probable cause of a crime as well as exigent circumstances justifying Palmer's seizure of the camera. Tran claims neither existed. The People claim that sufficient evidence supports both. The People have the better argument.

"[P]robable cause is a flexible, common-sense standard. It merely requires that facts available to the officer would 'warrant a man of reasonable caution in the belief,' [citation], that certain items may be contraband or stolen property or useful as evidence of a crime." (*Texas v. Brown* (1983) 460 U.S. 730, 742.) Here, there was sufficient

9

evidence that led Palmer to believe a crime had been committed and that exigent circumstances existed to seize Tran's dashboard camera.

"A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." (Veh. Code, § 23103, subd. (a).) Palmer's testimony established that he had probable cause to believe that Tran had been driving recklessly. He testified: (1) he was told that a vehicular collusion involved a potential fatality with a motorcycle rider being airlifted to a hospital; (2) he observed tire friction marks on the roadway indicating that Tran's car had drifted into the other lane of traffic on two-line roadway while attempting a sharp right turn; and (3) the friction marks indicated that Tran was traveling at a high rate of speed. In addition, Palmer explained that Ontiveros briefed him at the site of the accident, informing him that, based on the tire friction marks, scuffing on the exterior sidewalls of the vehicle's left side tires, and witness statements, Tran's vehicle was traveling at a high rate of speed in a reckless manner. Tran does not dispute this evidence. Instead, he simply argues the evidence was not enough to show he was driving recklessly.[2] We disagree. Based on the evidence proffered at the suppression hearing, it appears that Tran was traveling too fast in his car when he came to a sharp right turn, drifted into oncoming traffic, and struck a motorcycle traveling the opposite direction. We struggle to contemplate how this evidence would not lead Palmer to believe Tran had driven recklessly.

_____

[2]    Tran also points out that the only eyewitness to the accident told Palmer that he estimated Tran's speed before the curve was between 35 and 40 miles per hour. However, he does not explain how this claim undermines Palmer's conclusion that probable cause existed that Tran was driving recklessly.

10

Yet, even if probable cause existed, we still must evaluate whether exigent circumstances existed justifying a warrantless seizure of the dashboard camera. As part of this analysis, we must consider whether Palmer had probable cause to believe the camera contained evidence of a crime. To justify the warrantless seizure of the dashboard camera, the government bears the burden of proving both (1) the existence of " 'circumstances that would cause a reasonable person to believe that [a seizure] was necessary to prevent . . . the destruction of relevant evidence . . . or some other consequence improperly frustrating legitimate law enforcement efforts,' " (*United States v. Brooks* (9th Cir. 2004) 367 F.3d 1128, 1135, quoting *United States v. McConney* (9th Cir. 1984) 728 F.2d 1195, 1199), and (2) that a warrant " 'could not have been obtained in time.' " (*United States v. Struckman* (9th Cir. 2010) 603 F.3d 731, 738.)

Tran contends there were no exigent circumstances justifying Palmer's warrantless seizure of the dashboard camera. To this end, he emphasizes that he removed all personal items from his car in addition to his camera before his car was towed away; Palmer did not know whether the camera was on and/or recording at the time of the collision; and there is no evidence that Tran was going to destroy the camera or the camera's SD card. In describing why there was a lack of exigent circumstances, Tran urges us to follow *State v. West* (Mo.Ct.App. 2018) 548 S.W.3d 406 (*West*).

In *West*, law enforcement was investigating the scene of a fatal car accident involving a semi-truck. (See *West*, *supra*, 548 S.W.3d at pp. 409-410.) While the driver was at the hospital being treated for his injuries, law enforcement downloaded data from

11

the semi-truck's ECM without a warrant.[3] (*Id.* at p. 410.) After being charged with involuntary manslaughter, the driver moved to suppress evidence collected from the ECM without a warrant. (*Id*. at p. 409.) The trial court granted the motion. On appeal, one of the issues the appellate court addressed was the state's claim that exigent circumstances justified the warrantless search of the EMC. In affirming the trial court's order, the appellate court determined that substantial evidence supported the trial court's finding of a lack of exigent circumstances. The court noted that "[t]here [was] apparently a possibility that ECM data or 'black box' data can be 'written over' or that it is continually 'looped,' which could constitute an exigent circumstance, but there was insufficient evidence adduced at the hearing for the Court to conclude that such an occurrence was imminent in this case." (*Id.* at pp. 420-421.) The appellate court further determined that the state did not "identify an exigency that prevented securing a warrant to download the ECM data before the semi-truck was moved[,]" and the state downloaded additional data from the ECM the day after the semi-truck was moved to a tow facility again without obtaining a warrant. (*Id.* at p. 421.) The state, however, offered no argument that the second download was justified by exigent circumstances. (*Ibid*.)

---

3    Law enforcement crash investigator explained, "The ECM is like the brain of the truck. It controls all the functions of braking, throttle, transmission. Without an ECM on a diesel—modern diesel engine, they can't run. They need that ECM to operate. [¶] . . . [¶] As part of their function, they store data." (*West*, *supra*, 548 S.W.3d at p. 411.)

12

Here, *West*, *supra*, 548 S.W.3d 406 is not instructive. *West* is a warrantless search case. The instant matter involves a warrantless seizure. As we observe above, a seizure is "far less intrusive than a search." (*Payton*, *supra*, 573 F.3d at p. 863.) Unlike the search of the EMC in *West*, here the data from Tran's dashboard camera was not viewed or downloaded until after a warrant was obtained. Moreover, Tran had possession of the camera, and Palmer expressed concern that he could destroy the camera or the SD card from the camera. In *West*, there was no similar concern. The driver was in the hospital and did not possess the EMC. In fact, there was evidence offered that the driver was not aware of the existence of the EMC at the time it was searched. (*West*, at p. 411.) Simply put, *West* and the instant matter are so factually distinguishable that *West* is not helpful whatsoever to Tran's position here.

"Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, . . . the [Fourth] Amendment . . . permit[s] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it . . . . [Citations.]" (*Place*, *supra*, 462 U.S. at p. 701.) Exigent circumstances include "the need to prevent the destruction of evidence." (*Kentucky v. King* (2011) 563 U.S. 452, 455.) Here, the trial court found that Palmer had reason to believe there was evidence on the dashboard camera and Tran might seek to destroy the camera or the camera's SD card. We conclude substantial evidence supports that finding.

Ontiveros told Palmer that Tran had a dashboard camera in his vehicle, but he had removed it. The fact that Tran also had removed other personal items from his car is not

13

of the moment. Palmer did not seize any of those items or testify that he believed any of those items constituted evidence of a crime. Rather, he logically focused on the dashboard camera, a device with the capability to record the events leading to the collision. Nevertheless, Tran argues that Palmer did not know whether the camera contained any footage of Tran driving. To this end, he characterizes Palmer's interest in the camera as a mere "hunch." Not so. Palmer testified that he was familiar with dashboard cameras and affirmed that he encountered them frequently on the job. He explained: "We routinely worked side show type incidents where people have souped up their vehicles a lot of times, and they have dash cameras. They're using [them] to record their performance driving, their driving capabilities, to view at a later point." In addition, Palmer noticed that Tran's car had "a lot of aftermarket parts on it." Thus, based on Palmer's experience and his observation of Tran's vehicle, he believed that the subject dashboard camera contained footage of Tran driving.

Also, Palmer's belief that the camera contained evidence of a crime is further supported by Tran's reaction to Palmer asking about the camera. Tran was hesitant to get the camera for Palmer. He questioned Palmer's authority to take the camera. Tran appeared to Palmer as someone who did not want to turn over the camera. However, there is no indication that Tran protested based on his belief the camera did not contain any evidence of a crime. Tran did not tell Palmer there was no need for him to take the camera because there was no driving footage on it. Put differently, none of Tran's actions or statements to Palmer left any doubt that the subject dashboard camera contained footage of Tran driving as well as possible evidence of a crime.

14

Further, we conclude substantial evidence supports the trial court's finding that Palmer had reason to believe Tran could destroy the evidence on the camera. Palmer testified that he was aware that dashboard cameras usually have removable internal recording devices. Palmer's experience with high-performance vehicles containing dashboard cameras was that the drivers use the cameras to record their driving. He also mentioned his knowledge that dashboard cameras are breakable and easily hidden. Palmer understood that the incident he was investigating was a potentially fatal collision caused by a vehicle colliding with a motorcycle after crossing into the motorcycle's lane. Further, there was evidence pointing to the strong possibility of reckless driving on the part of Tran. As such, Palmer's primary focus was on securing the camera to ensure that the evidence was not destroyed or altered. Palmer's concern about the potential destruction of evidence was heightened by Tran removing the camera from his car and putting it in his backpack.

Again, Tran discounts the evidence presented at the suppression hearing and emphasizes that there is nothing indicating that he had, at the point Palmer asked for the camera, attempted to destroy the camera or remove the SD card and demolish it. In other words, Tran argues that Palmer's concern that evidence on the camera could have been destroyed was not a valid reason to seize the camera unless there was some evidence he had attempted to destroy or tamper with it. However, there is no such bright line requirement in order to find that exigent circumstances existed.

Instead, exigent circumstances are more generally described as circumstances that would cause a reasonable officer to believe immediate action is necessary to prevent,

15

among other things, the destruction of relevant evidence or some other consequence improperly frustrating legitimate law enforcement efforts. (See *United States v. Licata* (9th Cir. 1985) 761 F.2d 537, 543.) Thus, the threat that evidence will be destroyed or lost before the officer can obtain a warrant is a valid exigent circumstance justifying the officer's immediate seizure of the evidence. (See *Segura, supra,* 468 U.S. at p. 808; *Cupp v. Murphy* (1973) 412 U.S. 291, 296 [search and seizure of defendant's fingernail scrapings was constitutional because defendant may have been trying to destroy evidence while at the station].) The foundation of the exigency is "a belief that society's interest in the discovery and protection of incriminating evidence from removal or destruction can supersede, at least for a limited period, a person's possessory interest in property, provided that there is probable cause to believe that that property is associated with criminal activity. [Citation.]" (*Segura*, at p. 808.) The government bears a heavy burden of demonstrating that exceptional circumstances justified a departure from the warrant requirement (*Vale v. Louisiana* (1970) 399 U.S. 30, 34), and courts must examine the totality of circumstances existing at the time of the officer's warrantless intrusion to determine whether the officer was presented with an exigency (*People of the Territory of Guam v. Borja* (9th Cir. 1984) 732 F.2d 733, 736). There must be specific and articulable facts which, when taken together with rational inferences, demonstrate an exigency supporting the warrantless intrusion. (See *Terry v. Ohio* (1968) 392 U.S. 1, 21).

Based on the record before us, we conclude that all the circumstances, and the rational inferences stemming from them, existing at the time Palmer seized the dashboard camera would have caused a reasonable officer to believe that immediate acquisition of

16

the camera was necessary to preserve the potential evidence on it. Palmer's testimony at the suppression hearing supports a rational inference that the camera contained footage of Tran driving. Palmer further relied on his investigation of the scene, his experience in dealing with high-performance cars with dashboard cameras, his knowledge of dashboard cameras, the fact Tran removed the camera from the car and placed it in his backpack, and Tran's hesitancy in providing the camera to conclude he must seize the camera to prevent the destruction of evidence. His response was objectively reasonable.

Finally, for the first time in this appeal, Tran takes issue with the amount of time that transpired from the seizure of the camera until a search warrant was secured. He argues this three day span far outweighs the 90 minutes the court found unreasonable in *Place*, *supra*, 462 U.S. 696. (See *id*. at pp. 709-710.) He therefore asserts the three day gap rendered the seizure unreasonable. We disagree.

The seizure of the dashboard camera and the three days it took law enforcement to obtain a search warrant did not infringe upon Tran's liberty interest to the same extent as the seizure of the defendant's luggage for 90 minutes in *Place*. In *Place*, the defendant's luggage was seized from him at an airport. As the court noted, this type of seizure intruded on the defendant's possessory interest and his right to travel:

> "[I]n the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary. The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage. Moreover, he is not subjected to the coercive atmosphere of a custodial confinement or to the public indignity of being personally detained. Nevertheless, such a seizure can effectively restrain the person since

17

he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return." (*Place*, *supra*, 462 U.S. at p. 708.)

Here, we do not have similar concerns about the seizure of Tran's dashboard camera. That seizure did not disrupt Tran's travel plans because a dashboard camera clearly is not as integral to the necessities of travel as luggage containing clothes, toiletries, and other travel essentials. And, although we acknowledge that Tran did not have access to the camera while law enforcement held it, the police did not search the camera (i.e., view its contents) before obtaining a search warrant. So, Tran's privacy interest in its contents was not infringed. Simply put, we conclude the seizure of the dashboard camera and the subsequent three day holding of the camera while law enforcement obtained a search warrant did not run afoul of *Place*.

The trial court did not err denying Tran's motion to suppress.

DISPOSITION

The judgment is affirmed.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:



HALLER, J.



AARON, J.

19

Filed 11/13/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D074605 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN370370) |
| ROBERT KIEN TRAN, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed October 24, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties