FILED

Sep 25 2023, 8:46 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert J. Plato,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

September 25, 2023

Court of Appeals Case No.
23A-PC-452

Appeal from the
Madison Circuit Court

The Honorable
Andrew R. Hopper, Judge

Trial Court Cause No.
48C03-2204-PC-4

**Opinion by Judge Vaidik**
Judge Mathias concurs.
Judge Pyle dissents with separate opinion.

**Vaidik, Judge.**

# Case Summary

The police obtained a search warrant for a property associated with Robert J. Plato, Jr., that authorized them to search for and seize "paperwork relating to title work for vehicles." While executing the warrant, the police seized a computer belonging to Plato. Plato then made threats against the police, claiming his computer was improperly seized. He was charged with and convicted of Level 6 felony intimidation for making threats against the police for a prior lawful act—in this case, the seizure of his computer. Plato later sought post-conviction relief, alleging his appellate counsel was ineffective for not arguing on direct appeal that the seizure of his computer was unlawful because it was not specified in the warrant. We find that the police had reason to seize Plato's computer but not to search the contents without a second, more specific warrant. Because the police acted within the scope of the warrant when they seized Plato's computer, appellate counsel was not ineffective for not challenging the seizure of Plato's computer on direct appeal. Accordingly, we affirm the post-conviction court.

# Facts and Procedural History

In April 2018, the Madison County Drug Task Force was investigating Plato for a robbery he had planned that involved forcing the owner of a car lot to sign over titles to three cars in exchange for an unpaid drug debt. *See* Cause No.

48C03-1805-F5-1294.[1] The Drug Task Force obtained a search warrant for an address in Anderson associated with Plato. The warrant authorized the Drug Task Force to search for and seize "[w]eapons, ammunitions, and paperwork relating to title work for vehicles." Appellant's P-C App. Vol. II p. 28; *see also Plato v. State*, No. 21A-CR-1870, 2022 WL 570538 (Ind. Ct. App. Feb. 25, 2022). While executing the search warrant, Detective LeeAnn Dwiggins with the Madison County Sheriff's Department seized Plato's computer. After the seizure, Plato sent a letter to the Sheriff of Madison County, which provides in part:

> You need to resolve this issue with my computer right away. Dwiggins is nothing more than a common thief not a DTF [Drug Task Force] deputy and the very first time I see that thief, I will not treat her as a deputy of Madison County but as a thief, and will beat the breaks [sic] off that bi*ch. McDonalds, Walmart, don't matter where I see her, she will be beat like a thief!

*Plato*, 2022 WL 570538, *1.

[3] The State charged Plato with Level 6 felony intimidation. The charging information alleges that Plato "knowingly or intentionally communicate[d] a threat to a law enforcement officer, to wit: LeeAnn Dwiggins, with the intent that LeeAnn Dwiggins, be placed in fear of retaliation for a prior lawful act, to wit: seizing Robert J. Plato's computer pursuant to a lawful search warrant."

---

[1] Plato eventually pled guilty to Level 5 felony attempted robbery.

Appellant's P-C App. Vol. II p. 62; *see also* Ind. Code § 35-45-2-1(a)(2). The State later added a habitual-offender charge.

[4] Plato represented himself at trial. The jury found Plato guilty of intimidation, and he admitted being a habitual offender. The trial court sentenced Plato to two years for intimidation, enhanced by six years for the habitual-offender finding, for a total sentence of eight years.

[5] Plato, represented by counsel, appealed to this Court, making three arguments: (1) the State made an improper comment during closing argument; (2) the trial court abused its discretion in sentencing Plato; and (3) Plato's sentence is inappropriate. We found the first issue waived because Plato did not object to the State's comments during closing argument or argue fundamental error on appeal. We also found that the trial court did not abuse its discretion in sentencing Plato and that his sentence was not inappropriate.

[6] In April 2022, Plato, representing himself, filed a petition for post-conviction relief. As relevant to this appeal, Plato alleged that his appellate counsel was ineffective for not arguing on direct appeal that the seizure of his computer was unlawful. Appellant's P-C App. Vol. II p. 18. Following a hearing, the post-conviction court denied relief.

[7] Plato, again represented by counsel, now appeals.

# Discussion and Decision

[8] Plato appeals the denial of post-conviction relief. A defendant who petitions for post-conviction relief must establish the grounds for relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). If the post-conviction court denies relief, and the petitioner appeals, the petitioner must show the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 269.

[9] Plato contends his appellate counsel was ineffective. The standard for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel in that the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Overstreet v. State*, 877 N.E.2d 144, 165 (Ind. 2007). Our Supreme Court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. *Wrinkles v. State*, 749 N.E.2d 1179, 1203 (Ind. 2001). Plato's claim falls into the second category: failure to raise an issue. In evaluating such claims, we must consider whether the unraised issue was (1) "significant and obvious" from the face of the record and (2) "clearly stronger" than the raised issues. *Gray v. State*, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006), *trans. denied*.

[10] Here, to convict Plato of Level 6 felony intimidation, the State was required to prove that he knowingly or intentionally communicated a threat to Detective Dwiggins with the intent that she be placed in fear of retaliation "for a prior

lawful act, to wit: seizing Robert J. Plato's computer pursuant to a lawful search warrant." Plato argues his appellate counsel was ineffective for not arguing on direct appeal that his computer was unlawfully seized because the warrant did not specify that his computer could be searched or seized.

[11]  The Fourth Amendment to the United States Constitution requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." Here, the search warrant authorized the Madison County Drug Task Force to search for and seize "paperwork relating to title work for vehicles." When the search warrant was obtained, the police were investigating Plato for a robbery he had planned that involved forcing the owner of a car lot to sign over titles to three cars. Plato asserts that if the police wanted to seize his computer, then they should have asked to do so when requesting the search warrant.[2] The State responds that Plato's computer "was plainly covered by the search warrant" because "it was reasonable for [Detective Dwiggins] to believe that paperwork related to title work could have been recorded or stored digitally on Plato's computer." Appellee's Br. p. 17.

[12]  Although neither party directs us to an on-point case, the Ninth Circuit addressed a similar issue in *United States v. Giberson*, 527 F.3d 882, 887 (9th Cir. 2008). There, law enforcement obtained a warrant to search the defendant's house for "records" and "documents" related to his use of a false identification.

---

[2] The search warrant incorporates by reference Detective Dwiggins's sworn testimony. *See* Appellant's P-C App. Vol. II p. 28. However, the record doesn't contain her testimony.

As here, the warrant did not explicitly authorize the search or seizure of any computers. While executing the search warrant, law enforcement saw a computer, which was connected to a printer. Next to the printer was what appeared to be a sheet of fake identification cards that were not high quality and looked as if they could have been printed on the adjacent printer. Law enforcement seized the computer and obtained a second warrant to search it for records relating to the production of fake identification cards. During the search of the computer, law enforcement discovered evidence of child pornography, and the defendant was charged in federal court with child-pornography-related offenses. The defendant moved to suppress the evidence of child pornography, arguing law enforcement exceeded the scope of the first warrant when it seized his computer. The court denied the motion to suppress, and the defendant entered a conditional guilty plea.

[13] On appeal, the defendant argued his computer was unlawfully seized because the first search warrant did not specify that law enforcement could search or seize a computer. The Ninth Circuit first noted that it had "not yet had occasion to determine, in an opinion, whether computers are an exception to the general principle that a warrant authorizing the seizure of particular documents also authorizes the search of a container likely to contain those documents." *Id.* at 887. The defendant asserted that computers are different than other containers (such as filing cabinets and briefcases) and therefore are entitled to "heightened protection" and must be specified in the warrant. *Id.* The Ninth Circuit rejected the defendant's argument and concluded that

because documents related to the production of fake identification cards were found in and around the defendant's computer and were arguably created on and printed from it, it was "reasonable for officers to believe that the items they were authorized to seize would be found in the computer, and they acted within the scope of the warrant when they secured the computer." *Id.* at 888.

[14] A year after *Giberson*, the Ninth Circuit addressed a related issue in *United States v. Payton*, 573 F.3d 859 (9th Cir. 2009). There, the police were investigating the defendant for selling drugs and obtained a warrant to search his house for "[s]ales ledgers showing narcotics transactions such as pay/owe sheets." *Id.* at 863. Again, the warrant did not explicitly authorize the search or seizure of any computers. While executing the search warrant, the police found no evidence of drug sales but found a computer in the defendant's bedroom with a screensaver activated. An officer moved the mouse, which removed the screensaver, and clicked open a file, disclosing an image that looked to be child pornography. The defendant was charged in federal court with possession of child pornography and moved to suppress the evidence, arguing the search of his computer exceeded the scope of the warrant. The court denied the motion to suppress, and the defendant entered a conditional guilty plea.

[15] On appeal, the Ninth Circuit distinguished the case from *Giberson*. The court pointed out that in *Giberson*, law enforcement seized the computer and did not search it until after obtaining a second warrant. In *Payton*, however, the officer "searched first and seized afterwards." *Id.* at 863. The court highlighted that "[a] seizure of a computer to await a second warrant is nevertheless a Fourth

Amendment seizure, but it is far less intrusive than a search." *Id.* The court concluded that the police acted unreasonably in searching the defendant's computer without first obtaining another warrant.

[16] Here, Plato does not allege that his computer was searched, and thus we are not tasked with addressing the reasonableness of any search.[3] Instead, Plato only challenges the seizure of his computer. But we agree with the Ninth Circuit that a seizure is far less intrusive than a search. Given that the Madison County Drug Task Force's investigation of Plato involved paperwork, it was reasonable for the police to believe that paperwork (titles) may have been stored in Plato's computer. Hence, the police had reason to seize the computer but not to search the contents without a second, more specific warrant. Because Detective Dwiggins acted within the scope of the warrant when she seized Plato's computer, the seizure issue was not clearly stronger than the issues appellate counsel raised on direct appeal. Accordingly, the post-conviction court did not err in finding no ineffective assistance of appellate counsel.

[17] Affirmed.

Mathias, J., concurs.

Pyle, J., dissents with separate opinion.

---

[3] Plato, who represented himself at trial, argued the following during closing argument:

> There was no evidence given, whatsoever, that [Detective Dwiggins] even accessed that laptop. To even see what was on it. She never once contacted me and ask[ed] me what the password was so that's a pretty good indication that she never even accessed that laptop."

Trial Tr. Vol. II p. 20.

**Pyle, Judge, dissenting.**

[18] I respectfully dissent from my colleagues' opinion affirming the denial of Plato's petition for post-conviction relief. The majority ably concludes that Plato's appellate counsel was not ineffective for failing to challenge on direct appeal the validity of the search warrant used to seize his laptop. Specifically, my colleagues hold that the language contained in the search warrant justifying the seizure of the laptop was sufficient to satisfy the particularity requirement of the Fourth Amendment. However, I believe that the warrant violated the particularity requirement. In addition, the deficiency in the search warrant was obvious from the face of the record and it represented a stronger issue than those raised by appellate counsel. *See Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006) (holding appellate counsel ineffective when unraised issue was significant and obvious, stronger than those raised on direct appeal, and precedent was available supporting the unraised issue). As a result, I believe that appellate counsel's performance fell below prevailing professional norms because the State's reliance on a lawful search warrant was an essential element of the charged crime. Further, if appellate counsel had cited relevant authority, appellant's counsel would have likely been successful on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*), *reh'g denied*, *cert. denied*.

[19] In this case, the State alleged that, on or about April 14, 2019, Plato committed intimidation, a Level 6 felony. At that time, the State was required to prove that Plato communicated a threat to Detective Dwiggins, a law enforcement

officer, with the intent that she be placed in fear of retaliation for a prior lawful act. INDIANA CODE § 35-45-2-1(a)(2) and (b)(1)(B)(i). The prior lawful act that the State relied upon was "seizing [Plato's] computer pursuant to a *lawful* search warrant." (App. Vol. 2 at 29) (emphasis added). At his trial, Plato challenged the search and seizure of his laptop computer pursuant to the search warrant, preserving the issue for appeal. (App. Vol. 2 at 234). In addition, the trial court instructed the jury that the State had to prove "each of these elements beyond a reasonable doubt." (Prior Case Tr. Vol. 2 at 203). On these facts alone, the record clearly shows that proving Detective Dwiggins was acting pursuant to a lawfully issued search warrant was critical to the State's case. Instead of raising an issue challenging the search warrant or the sufficiency of the evidence, appellate counsel challenged the State's closing argument and raised sentencing issues.

[20] The Fourth Amendment of our Federal Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. (emphasis added). "The Founding generation crafted the Fourth Amendment as a 'response to the reviled general warrant and writs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.'" *Carpenter v. U.S.*, 138 S. Ct. 2206, 2213 (2018) (quoting *Riley v. California*, 134 S. Ct. 2473, 2492 (2014)) (cleaned up). "The problem posed by the general warrant is not that of intrusion per se, but of a general,

exploratory rummaging in a person's belongings . . . ." *Warren v. State*, 760 N.E.2d 608, 610 (Ind. 2002) (cleaned up). In other words, a warrant that does not particularly describe the items to be seized gives a law enforcement officer too much discretion. "This requirement makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, *nothing* is left to the discretion of the officer executing the warrant." *Id.* (cleaned up) (emphasis added). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 124 S. Ct. 1264, 1291 (2004) (citations omitted) (holding that the search warrant must particularly describe the items to be seized independently of the affidavit or application supporting the warrant). However, the particularity requirement is not draconian; it does not require an exact description of the property to be searched for and seized. *State v. Foy*, 862 N.E.2d 1219, 1227 (Ind. Ct. App. 2007), *trans. denied*. "In practice, courts have . . . demanded that the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description be as particular as circumstances permit." *Id.* (cleaned up).

[21] In this case, the relevant portion of the search warrant used to seize Plato's laptop computer contained the following description: "*paperwork* relating to title work for vehicles." (App. Vol. 2 at 28) (emphasis added). There is no mention of a computer. Today, it is difficult to make the argument that the term "paperwork" is sufficiently specific so as to lead a reasonable person to

believe that it also means "computers." It is insufficient to posit that, because computers might contain scanned copies of paperwork relating to vehicle titles, the term "paperwork" adequately describes computers. My esteemed colleagues conclude that this approach is sufficient. They believe the officers had the authority to seize the laptop but could not search it without obtaining a second warrant. In my view, my colleagues' Solomonic approach is confounding. The officers either had the lawful authority to seize and search the computer or they did not.

[22] My colleagues' approach frustrates the very purpose of the particularity requirement: assuring "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the *limits* of his power to search." *Groh*, 124 S. Ct. at 1292 (emphasis added). The question is whether the term "paperwork" describes Plato's computer with as much reasonable certainty and particularity as possible under the circumstances. I believe that the search warrant in this case gave law enforcement too much discretion. The term "paperwork" neither described Plato's laptop with reasonable certainty nor with as much particularity as possible under the circumstances. If the officers had probable cause to believe that a search for evidence of a robbery scheme involving vehicle titles would be found on Plato's laptop, all they had to do was request the judicial authority to include the term "computers" on the search warrant.

[23] Because appellate counsel did not raise an issue challenging the sufficiency of the evidence, regarding the particularity of the search warrant, I believe

appellate counsel's performance was deficient and that Plato was prejudiced. This issue was significant and obvious from the face of the record and was stronger than the issues raised on direct appeal, likely resulting in reversal on appeal. As a result, I would reverse the post-conviction court's denial of post-conviction relief.