[Cite as *State v. Groce*, 2025-Ohio-4345.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

      Plaintiff-Appellee,          :

                                                 No. 24AP-334
v.                                      :          (C.P.C. No. 16CR-3448)

Drakkar D. Groce,                       :          (REGULAR CALENDAR)

      Defendant-Appellant.         :

D E C I S I O N

Rendered on September 16, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli*.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, Drakkar D. Groce, appeals a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief without an evidentiary hearing. For the following reasons, we affirm that judgment.

**I. Facts and Procedural History**

{¶ 2} On June 24, 2016, Groce was indicted with (1) one count of engaging in a pattern of corrupt activity, a first-degree felony in violation of R.C. 2923.32; (2) one count of trafficking in cocaine, a first-degree felony in violation of R.C. 2925.03; (3) one count of possession of cocaine, a first-degree felony in violation of R.C. 2925.11; (4) one count of illegal manufacture of drugs, a second-degree felony in violation of R.C. 2925.04; and (5) four counts of trafficking in cocaine, fifth-degree felonies in violation of R.C. 2925.03.

Each of the charges included an accompanying one-year firearm specification pursuant to R.C. 2941.141(A). Groce pleaded not guilty to all charges.

{¶ 3} Plaintiff-appellee, State of Ohio, tried Groce with his two co-defendants, Alvin Clayton Dent, Jr., and William L. Walker, Jr. At trial, Lawrence E. Gauthney, a detective with the Columbus Division of Police, testified that community complaints about drug activity at 1639 Greenway Avenue caused him to conduct "spot checks," as well as longer periods of surveillance, at that address. While watching the property, Detective Gauthney saw foot traffic "consistent with an up-and-running drug house." (Tr. Vol. II at 398.) Detective Gauthney next instigated a controlled purchase of crack cocaine at 1639 Greenway Avenue by using a confidential informant.

{¶ 4} Using information gained through his surveillance and the controlled buy, Detective Gauthney obtained a warrant to search 1639 Greenway Avenue. The warrant permitted the police to search for and seize:

> Schedule II controlled substance, to wit: Crack-Cocaine, as described in the Ohio Revised Code; papers indicating occupancy and/or ownership; drug paraphernalia; drug records; drug monies and/or proceeds; weapons; other evidence of illicit drug trafficking unknown at this time[.]

(Warrant to Search, attached to Apr. 29, 2019 Belli Aff.)

{¶ 5} On March 29, 2016, Detective Gauthney led a team of law enforcement officers in executing the search warrant on the property. The three co-defendants were not at the house when the police executed the search warrant. Police, however, found and seized evidence indicative of drug trafficking activity from the house, including drugs, money, guns, ammunition, scales, and baggies.

{¶ 6} During the search, Detective Gauthney discovered the house had a video surveillance system. Detective Gauthney found security cameras in three locations: (1) over the front door, (2) on a railing beside the back door, and (3) propped on top of a stand in the kitchen. Detective Gauthney also noticed a monitor and digital video recorder ("DVR") in the sitting room. When police entered the house, the monitor was active and showed live feed from the three security cameras. Detective Gauthney discovered that he could stand in the kitchen within view of the camera, look through the kitchen door into the sitting room, and see himself on the security monitor.

{¶ 7} The view of the kitchen security camera included the kitchen counter, cabinets, stove, and sink. In the kitchen cabinets, police found multiple baggies of powder cocaine and a crack cocaine "cookie," the solid white disc that forms when cocaine, water, and baking soda are mixed and boiled, then cooled and dried. Police also found in the kitchen cabinets or on the kitchen counter an open box of baking soda, glass containers, baggies, a scale, and a razor blade. These items are used in the manufacture or packaging of crack cocaine. Additionally, scene photographs show a liberal dusting of white powder around and on top of the microwave sitting on the kitchen counter.

{¶ 8} Upon reviewing the video surveillance system, Detective Gauthney concluded "obviously they're recording . . . where the stove was placed, the microwave and the kitchen cabinets." (Tr. Vol. II at 447.) Detective Gauthney decided to seize the DVR.

{¶ 9} At trial, the state played video footage from the DVR while Detective Gauthney described the events on screen. In total, the state presented the jury with 25 video clips purporting to show 15 drug sales. All the video clips were recorded on March 29, 2016, the date on which the police executed the search warrant. In the video clips, Groce prepares baggies of what appears to be crack cocaine and sells those baggies. Groce also appears to cook crack cocaine, cut up a large rock of crack cocaine, pack baggies of crack cocaine, move cocaine in and out of the kitchen cabinets, and exchange drugs for money.

{¶ 10} At the conclusion of the trial, the jury returned guilty verdicts on all counts against Groce, including the accompanying firearm specifications. In a judgment entry issued December 21, 2017, the trial court convicted Groce and sentenced him to an aggregate prison term of 28 years. The trial court further ordered his sentence run consecutive to his 8-year sentence in Franklin C.P. No. 16CR-3016 for a total of 36 years in prison.

{¶ 11} On Groce's direct appeal of his judgment of conviction and sentence, this court affirmed Groce's convictions on all counts except for the count of engaging in a pattern of corrupt activity. *State v. Groce*, 2019-Ohio-1007, ¶ 90 (10th Dist.). The state then appealed. The Supreme Court of Ohio reversed our judgment and remanded the case to this court for consideration of the issues we deemed moot. *State v. Groce*, 2020-Ohio-6671, ¶ 10. On remand, we affirmed the entirety of Groce's judgment of conviction and sentence. *State v. Groce*, 2021-Ohio-3490, ¶ 20 (10th Dist.).

{¶ 12} On April 29, 2019, Groce filed a petition for postconviction relief pursuant to R.C. 2953.21 in the trial court. In his petition, Groce argued that his trial counsel's failure to move to suppress the video evidence violated his Sixth Amendment right to effective assistance of counsel. Groce contended that the police unlawfully seized the DVR because it was outside the scope of the search warrant, and it did not fall within the plain-view exception to the warrant requirement. The state opposed Groce's petition.

{¶ 13} The trial court stayed Groce's postconviction relief petition during the pendency of the appeals. Without a hearing, on April 30, 2024, the trial court issued a decision and entry denying Groce's petition. The trial court found that the DVR contained "evidence of illicit drug trafficking and was a record of the drugs." (Apr. 30, 2024 Decision & Entry at 5-6.) The warrant authorized the police to search for and seize "drug records" and "other evidence of illicit drug trafficking unknown at this time." (Warrant to Search, attached to Apr. 29, 2019 Belli Aff.) A motion to suppress, therefore, would have failed because the DVR was within the scope of the warrant. Consequently, the trial court concluded that Groce had not met his burden of submitting sufficient operative facts to support his claim of ineffective assistance of counsel.

## II. Assignment of Error

{¶ 14} Groce now appeals the April 30, 2024 judgment and assigns the following assignment of error for our review:

> THE COMMON PLEAS COURT ABUSED ITS DISCRETION BY TREATING DEFENDANT APPELLANT'S SIXTH AMENDMENT INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM AS ONE ON THE MERITS IN A DIRECT APPEAL, AND DENYING HIS POST-CONVICTION RELIEF PETITION WITHOUT HOLDING AN EVIDENTIARY HEARING.

## III. Discussion

{¶ 15} By his sole assignment of error, Groce argues the trial court erred in reviewing, and ultimately denying, his petition for postconviction relief without holding a hearing. We disagree.

{¶ 16} Ohio law permits a person convicted of a crime to petition the trial court to set aside his conviction on the basis that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or

the Constitution of the United States." R.C. 2953.21(A)(1)(a)(i). A criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing on the petition. *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999). Rather, the trial court, as gatekeeper, only grants a petitioner a hearing if he has met the burden for obtaining a hearing. *State v. Gondor*, 2006-Ohio-6679, ¶ 51. To grant a hearing on a postconviction petition, a trial court must "determine whether there are substantive grounds for relief." R.C. 2953.21(D). A petition presents a substantive ground for relief if the petition " 'is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case.' " *State v. Bunch*, 2022-Ohio-4723, ¶ 23, quoting *State v. Milanovich*, 42 Ohio St.2d 46 (1975), paragraph one of the syllabus.

{¶ 17} When determining whether a petition states a substantive ground for relief, "the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings." *Id.* at ¶ 24, citing R.C. 2953.21(D). "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *Id.*, citing R.C. 2953.21(D) and (E); *accord Calhoun* at paragraph two of the syllabus ("[A] trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief."). On the other hand, "[i]f the record does not on its face disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.' " *Bunch* at ¶ 24, quoting R.C. 2953.21(F).

{¶ 18} An appellate court reviews a trial court's decision to deny a postconviction petition without a hearing for an abuse of discretion. *Gondor* at ¶ 52. An appellate court may reverse a decision under the abuse of discretion standard if that decision is unreasonable, arbitrary, or unconscionable. *State v. Hickman*, 2024-Ohio-5747, ¶ 32.

{¶ 19} In his petition for postconviction relief, Groce argued that he was denied his constitutional right to effective assistance of counsel because his trial attorney did not move to suppress the video evidence the state presented at trial. Failure to file a motion to

suppress does not constitute per se ineffective assistance of counsel. *State v. Spaulding*, 2016-Ohio-8126, ¶ 94; *State v. Brown*, 2007-Ohio-4837, ¶ 65. Rather, to prevail on an ineffective assistance claim, a defendant must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). To meet that requirement when the alleged deficiency is the failure to move to suppress evidence, the defendant must prove that there was a basis to suppress the evidence in question. *Spaulding* at ¶ 94. " 'Where the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.' " *State v. Michie*, 2020-Ohio-3152, ¶ 9 (10th Dist.), quoting *State v. Gibson*, 69 Ohio App.2d 91, 95 (8th Dist. 1980).

{¶ 20} If the defendant shows that counsel's performance was deficient, then the second prong of the *Strickland* test requires the defendant to prove prejudice to prevail. *Strickland* at 687; *Bradley* at 141-42. To demonstrate prejudice, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694; *accord Bradley* at 142.

{¶ 21} Notably, because we review Groce's ineffective assistance claim in relation to the trial court's decision to deny Groce a hearing on his postconviction petition, we must apply a different standard than that applied to a decision on the merits of an appeal or on the merits of a postconviction petition. To obtain a hearing on his postconviction petition, Groce did not need to definitively establish trial counsel's deficiency or resulting prejudice. *See Bunch*, 2022-Ohio-4723, at ¶ 27. Rather, the postconviction petition must be sufficient on its face to raise an issue as to whether Groce was deprived of the effective assistance of counsel, and Groce's claim must depend on factual allegations that cannot be determined by examining the record of his trial. *See id.*

{¶ 22} On appeal, Groce contends that his postconviction relief petition raised an issue as to whether his counsel was deficient, and this deficiency prejudiced him. According to Groce, his trial counsel was deficient because counsel had a reasonable basis on which to

move to suppress the video evidence from the DVR. Groce maintains that the seizure of the DVR violated his constitutional rights because Detective Gauthney impermissibly exceeded the scope of the warrant when he seized the DVR, and the DVR did not fall within the plain-view exception to the warrant requirement.

{¶ 23} There is no dispute that Groce's claim for ineffective assistance of counsel relies on evidence not within the trial record. Groce included with his petition the search warrant, which was not part of the trial record. Therefore, our analysis focuses on whether Groce raised an issue as to whether his trial counsel was ineffective in failing to move to suppress the video evidence.

{¶ 24} The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution is nearly identical in language, and its protections are coextensive with the Fourth Amendment. *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998).

{¶ 25} The Warrant Clause of the Fourth Amendment requires warrants to particularly describe the things law enforcement officers can seize. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). In short, the terms of the warrant circumscribe the scope of the search. *Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

{¶ 26} When determining the scope of a warrant, courts interpret the warrant's terms in a commonsense and realistic manner, and do not apply hypertechnical scrutiny. *United States v. Trinh*, 665 F.3d 1, 15 (1st Cir. 2011); *United States v. Okorie*, 425 Fed.Appx. 166, 169, fn. 1 (3d Cir. 2011); *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009); *accord United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021), quoting *United States*

*v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011) (per curiam) (" 'When considering whether a search exceeded the scope of a warrant, we look to the fair meaning of the warrant's terms.' "). "Agents may seize an item pursuant to a warrant even if it 'does not expressly mention and painstakingly describe it,' . . . because the specificity required may 'vary according to the circumstances and type of items involved.' " *United States v. Young*, 916 F.3d 368, 377 (4th Cir. 2019), quoting *Phillips* at 225 (first quote) and *In re Grand Jury Subpoena*, 920 F.2d 235, 239 (4th Cir. 1990) (second quote). A search warrant need not describe an item with elaborate detail to satisfy the Fourth Amendment; rather, the description must provide enough specificity to enable officers executing the warrant to identify the item to be seized with reasonable certainty. *Russell v. Harms*, 397 F.3d 458, 464 (7th Cir. 2005); *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004); *United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994). "Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis." *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019); *accord Alvix Laboratories, L.L.C. v. United States*, 795 Fed.Appx. 931, 932 (5th Cir. 2020); *United States v. Patel*, 429 Fed.Appx. 885, 888 (11th Cir. 2011); *Phillips* at 227. "In determining whether officers executing a search warrant acted reasonably, courts must examine only those 'facts available to the officers at the time.' " *Phillips* at 227, quoting *Garrison*, 480 U.S. at 88.

{¶ 27} In this case, Detective Gauthney obtained a warrant that authorized the search for and seizure of "drug records." (Warrant to Search, attached to Apr. 29, 2019 Belli Aff.) The trial court determined in its decision that the DVR contained video evidence that constituted "a record of the drugs." (Apr. 30, 2024 Decision & Entry at 5-6.) Thus, the state contends, the seizure of the DVR was within the scope of the warrant because the video it contained was a "drug record."

{¶ 28} Groce's sole argument to the contrary is that the DVR "does 'not fit naturally' under the categor[y]" of drug record. (Appellant's Brief at 12, fn. 1, quoting *State v. Villolovos*, 2019-Ohio-241, ¶ 23 (6th Dist.).) This argument relies on a factually similar case, *Villolovos*, in which the Sixth District Court of Appeals affirmed a judgment suppressing video evidence contained on a DVR seized pursuant to a search warrant. There, like in this case, the police obtained a search warrant for a residence after surveilling

the residence and observing foot and vehicle traffic consistent with drug trafficking. *Id.* at ¶ 2. Although the warrant did not specifically identify DVRs or electronics as items to be seized, it did permit the seizure of "drug transaction records." *Id.* During the search, police officers found numerous security cameras attached to the outside of the residence and a DVR connected to a monitor in an upstairs bedroom. *Id.* at ¶ 3. The police seized the DVR. *Id.* Upon reviewing the video recordings on the DVR, the lead detective discovered that one of the exterior security cameras was pointed in the direction of narcotics that were located outside the house, between it and a neighboring house. *Id.* at ¶ 3, 11. The police had not observed any drug activity in that area before viewing the video. *Id.* at ¶ 11.

{¶ 29} The trial court granted the defendants' motions to suppress the contents of the DVR, finding its seizure violated the Fourth Amendment. *Id.* at ¶ 14. In relevant part, the state argued on appeal that the trial court erred in holding that the DVR was not specified in the search warrant. *Id.* at ¶ 16. The state contended that the police could seize the DVR as a "drug transaction record" because it contained a recording of individuals accessing a stash of drugs. *Id.* at ¶ 17. In rejecting that argument, the Sixth District Court of Appeals stated:

> [W]e agree with appellees that to characterize the DVR system as a "drug transaction record" . . . would require us to shoehorn the evidence into [a] general, ill-fitting categor[y]. The DVR system simply does not fit naturally into any of the general categories specified in the warrant.

*Id.* at ¶ 23.

{¶ 30} The trial court found *Villolovos* factually distinguishable from this case. We agree with the trial court. Unlike the police officers in *Villolovos*, Detective Gauthney was able, during the search, to connect the video surveillance system to the drug manufacture and sale occurring at the house. Because the security monitor was active when the police officers initiated the search, Detective Gauthney realized that the security camera in the kitchen was recording the kitchen cabinets and counter. *See* Tr. Vol. II at 447 ("[O]bviously, they're recording . . . where the stove was  placed, the microwave and the kitchen cabinets."). In the area of the kitchen being recorded, the police found all the items needed to cook and package crack for sale, including cocaine, baking soda, glass containers, baggies, a scale, and a razor blade. The police also discovered white powder—the apparent remnant of prior crack cooking sessions—around and on top of the microwave. Therefore,

Detective Gauthney could reasonably conclude that the DVR contained a video recording of the production and preparation of crack cocaine for sale. Detective Gauthney thus acted reasonably in seizing the DVR as containing a "drug record."

{¶ 31} Moreover, courts have found that officers do not exceed the scope of a warrant permitting them to search for and seize "records" when they search or seize electronic media that could reasonably contain the records in question. *United States v. Peters*, 92 F.3d 768 (8th Cir. 1996) ("the general term 'records' adequately covered the search of records in audio cassette form"); *United States v. Lucas*, 932 F.2d 1210, 1215-16 (8th Cir. 1991) (government could seize an answering machine and cassette tape because the warrant's authorization to seize records was sufficiently particular to include cassette tapes); *United States v. Reyes*, 798 F.2d 380, 382-83 (10th Cir. 1986) (warrant permitting the seizure of "drug trafficking records . . . identifying cocaine customers, sources, [etc.]" authorized agents to take a cassette tape containing discussions concerning the sale and purchase of drugs; "the seizure of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search"). Courts have recognized that "records" may exist in multiple formats, including electronic recordings. In this case, a warrant authorizing the seizure of "drug records" included within its scope a DVR police could reasonably conclude contained a video recording depicting the production and preparation of drugs for sale.

{¶ 32} The dissent asserts that a hearing is required to investigate alleged evidentiary gaps regarding what law enforcement knew when they seized the DVR. However, the Fourth Amendment to the United States constitution requires reasonableness, and reasonableness entails "sufficient probability, not certainty." (Further quotation omitted.) *Garrison*, 480 U.S. at 87. Given that law enforcement discovered a surveillance camera pointed at the apparent site of crack production and processing, Detective Gauthney could conclude with sufficient probability that the DVR contained a video recording showing drug manufacture and packaging. Because such a video recording would constitute a "drug record," Detective Gauthney could reasonably seize the DVR pursuant to the search warrant. The dissent also contends that a hearing is necessary to determine if Detective Gauthney knew about the video security system prior to the search.

However, this information would not elucidate whether the video recording on the DVR constituted a "drug record," and thus fell within the scope of the search warrant.

{¶ 33} We recognize that Groce submitted an affidavit with his postconviction petition from an attorney, in which that attorney stated that the DVR was "not described in, and [is] therefore outside the scope of, the command portion of the warrant." (Blake Aff. at ¶ 5, attached to Apr. 29, 2019 Def.'s Postconviction Petition.) Whether a search is within the scope of a search warrant is a question of law. *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008); *United States v. Young*, 263 Fed.Appx. 710, 713 (10th Cir. 2008). Consequently, in his affidavit, the attorney does not testify to any fact, but only offers notarized legal argument. We, therefore, treat the attorney's opinion as merely an extension of the argument set forth in Groce's postconviction petition, not evidence.

{¶ 34} Given our conclusion that the warrant authorized the seizure of the DVR, we do not address Groce's arguments that (1) police could not lawfully seize the DVR under the clause in the warrant permitting the seizure of "other evidence of illicit drug trafficking unknown at this time" because that clause violated the Fourth Amendment's particularity requirement, and (2) the video evidence was not admissible under the plain-view exception to the warrant requirement. These arguments are moot as the warrant permitted the seizure of the DVR as a "drug record."

{¶ 35} Before concluding, we must address Groce's argument that the trial court erred in considering Detective Gauthney's trial testimony in determining whether Groce's postconviction petition raised an issue as to whether his trial counsel was deficient in not moving to suppress the video evidence. The trial court did not err as alleged. As we stated above, when determining whether a postconviction petition states a substantive ground for relief—a necessary condition for a hearing—"the trial court must consider *the entirety of the record from the trial proceedings* as well as any evidence filed by the parties in postconviction proceedings." (Emphasis added.) *Bunch*, 2022-Ohio-4723, at ¶ 24; *accord State v. Blanton*, 2022-Ohio-3985, ¶ 24, quoting R.C. 2953.21(D) ("Before a trial court may grant a hearing on a petition, it must evaluate the petition in the context of the entire record in the case to determine whether the petition alleges 'substantive grounds for relief.' ").

{¶ 36} Because Detective Gauthney did not exceed the scope of the warrant when he seized the DVR, Groce's trial counsel did not have any basis on which to move to suppress

the video evidence contained on the DVR. Groce, therefore, did not raise any triable issue of fact in his postconviction petition as to whether his trial counsel was deficient. The trial court essentially concluded the same, holding "[t]here is nothing that Defendant has offered in his Petition that shows trial counsel acted incompetently and acted outside the wide range of professionally competent assistance." (Apr. 30, 2024 Decision & Entry at 6.)

{¶ 37} As a final matter, we recognize, and reject, the dissent's conclusion that the trial court erred in applying "a heightened legal standard" to deny Groce's postconviction petition without a hearing. (Dissent at ¶ 40.) When reviewing an ineffective assistance claim as it relates to a decision to grant or deny a hearing on a postconviction petition, a trial court applies a hybrid standard that combines the ineffective assistance standard of *Strickland* and the postconviction hearing standard of *Milanovich*. *Bunch*, 2022-Ohio-4723, ¶ 37. This standard requires a petitioner to demonstrate "a triable issue of fact, supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him." *Id*. In finding that Groce offered nothing in his petition to show that his counsel acted incompetently, the trial court necessarily determined that Groce failed to raise a triable issue of fact as to the adequacy of his counsel's performance. Thus, the trial court applied the proper standard in denying Groce a hearing on his postconviction petition.

{¶ 38} In the absence of any triable issue of fact as to defense counsel's effectiveness, Groce's postconviction petition did not state a substantive ground for relief and the trial court did not abuse its discretion in denying the petition without a hearing. Accordingly, we overrule Groce's sole assignment of error.

## IV. Conclusion

{¶ 39} For the foregoing reasons, we overrule the sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS, J., concurs.
MENTEL, J., dissents.

MENTEL, J., dissenting.

{¶ 40} I respectfully dissent from the majority decision on several grounds. As an initial matter, I find that the trial court erred in applying a heightened legal standard under

*Strickland v. Washington*, 466 U.S. 668 (1984) to deny Groce's petition for postconviction relief without a hearing. Because the trial court applied the incorrect legal standard, I would reverse and remand this matter back to the trial court to apply the standard articulated in *State v. Bunch*, 2022-Ohio-4723. Alternatively, I find the trial court erred by denying Groce's petition for postconviction relief without a hearing as the petition was sufficient on its face to raise an issue as to whether he was deprived of effective assistance of counsel, and his claim depends on factual allegations that cannot be determined by examining the record of his trial. Therefore, I would alternatively sustain Groce's sole assignment of error and remand this matter for a hearing.

{¶ 41} R.C. 2953.21 provides a petitioner a statutory avenue to seek postconviction relief. To prevail in a petition for postconviction relief, a petitioner must demonstrate a violation of his or her constitutional rights, which renders the judgment of conviction void or voidable. *State v. Jackson*, 2024-Ohio-2091, ¶ 25 (2d Dist.), citing R.C. 2953.21(A)(1)(a)(i). While a petitioner is not automatically entitled to a hearing, the statute does not require the person to meet their full burden at the time the petition is filed. The Supreme Court of Ohio in *Bunch* addressed the standard a trial court must utilize when resolving whether a hearing should be held on a postconviction petition when the claim is based on ineffective assistance of counsel. The *Bunch* court emphasized the distinction between the petitioner's burden to receive a hearing on a petition for postconviction relief and the standard for granting relief on the petition. *Bunch* at ¶ 22. To warrant a hearing, the petitioner must merely establish "whether there are substantive grounds for relief." R.C. 2953.21(D). When "determining whether the petition states a substantive ground for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings." *Id*. at ¶ 24, citing R.C. 2953.21(D). The petitioner states substantive grounds for relief "[i]f the petition is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case." (Internal citation and quotation omitted.) *Bunch* at ¶ 23. Stated another way, " '[i]*f the record does not on its face disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.*' " (Emphasis added.) *Id*. at ¶ 24, quoting R.C. 2953.21(F). However,

"[i]f the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *Id*. at ¶ 24, citing R.C. 2953.21(D) and (E).

{¶ 42} We review the trial court's denial of a petition for postconviction relief without a hearing for an abuse of discretion. *State v. Canas,* 2025-Ohio-1471, ¶ 11 (10th Dist.), citing *State v. Boddie*, 2013-Ohio-3925, ¶ 11 (10th Dist.). A reviewing court will not reverse a trial court's judgment under an abuse of discretion analysis unless the decision is unreasonable, arbitrary, or unconscionable. *State v. Foster*, 2024-Ohio-2924, ¶ 61 (10th Dist.), citing *State v. Wade*, 2021-Ohio-4090, ¶ 9 (10th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Applying the incorrect legal standard in a postconviction proceeding is also reversible error under an abuse-of-discretion analysis. *Bunch* at ¶ 25.

{¶ 43} On April 30, 2024, the trial court issued its decision and entry denying Groce's petition for postconviction relief without an evidentiary hearing. The trial court, outside a single reference to *State v. Calhoun*, 86 Ohio St.3d 279, 283 (1999) for the proposition that the petitioner bears the "initial burden of submitting evidentiary items with sufficient operative facts to support the claimed constitutional error," examined Groce's petition under a pure *Strickland* analysis. The trial court held that the video evidence obtained from the seized DVR system fell under the "other evidence of illicit drug trafficking unknown at this time" provision of the warrant, and, therefore, Groce was unable to demonstrate that if the "motion was filed it would have been meritorious. [Groce] has also failed to show trial counsel failed to review the merits of the suppression issue with defendant or that the conduct was 'outside the wide range of professionally competent assistance.' " (Apr. 30, 2024 Decision & Entry at 3, 5, 6, quoting *Strickland* at 690.)

{¶ 44} While the well-established *Strickland* standard controls the ineffective assistance of counsel analysis, a trial court is not tasked with resolving the merits of a petition for postconviction relief before a hearing. Instead, the trial court's role is to operate in a gatekeeping function. *Foster* at ¶ 59, citing *State v. Gondor*, 2006-Ohio-6679, ¶ 51. Prior to a hearing, Groce is not required to "definitively establish counsel's deficiency or whether [Groce] was prejudiced by it." *Bunch* at ¶ 27. The petitioner is merely " 'required to raise in his petition a triable issue of fact, supported by evidence outside the record,

whether his trial counsel was deficient and whether that deficiency prejudiced him.' " *Foster* at ¶ 6, quoting *Bunch* at ¶ 37.

{¶ 45} The trial court treated this case as if it were a direct appeal instead of a petition for postconviction relief. (*See* Apr. 30, 2024 Decision & Entry at 6 ("Defendant is unable to show that if this motion was filed it would have been meritorious.").) Here, we are examining Groce's "ineffective-assistance claim as it relates to a decision whether to grant a hearing on a postconviction petition *rather than as it affects a decision on the merits of an appeal or on the merits of the postconviction petition*." (Emphasis added.) *Bunch* at ¶ 27. While the trial court cited to *Calhoun*, its analysis far exceeded the scope of its review by reaching the ultimate merits of the petition without first conducting a hearing. Most notably, the trial court makes no reference, let alone discussion, of R.C. 2953.21 in the entirety of its decision. The majority decision contends that the trial court applied the proper standard writing, "[i]n finding that Groce offered nothing in his petition to show that his counsel acted incompetently, the trial court necessarily determined that Groce failed to raise a triable issue of fact as to the adequacy of his counsel's performance." *Supra* at ¶ 37. The *Bunch* court rejected the approach espoused by the majority finding the Seventh District Court of Appeals, despite citing to R.C. 2953.21 and *Calhoun*, held the petitioner to the heightened standard established in *Strickland*. *See Bunch*, 2022-Ohio-4723, at ¶ 19, 29[1]; *State v. Bunch*, 2021-Ohio-1244, ¶ 17 (7th Dist.). I believe the trial court's application of the incorrect legal standard is grounds, alone, to reverse its decision. " '[I]f it is obvious that a trial court applied the wrong legal standard to the evidence before it, this Court must reverse and remand for the trial court to apply the appropriate legal standard in the first instance.' " *In re A.M.*, 2017-Ohio-7690, ¶ 8 (9th Dist.), quoting *In re I.S.*, 2009-Ohio-6432, ¶ 8, citing *Copley Twp. Bd. of Trustees v. Lorenzetti*, 2001 Ohio App. LEXIS 4825 (9th Dist. Oct. 31, 2001). Because I find that the trial court applied the incorrect legal standard, I would reverse the judgment and remand this matter to the trial court with

---

[1] The majority decision's conclusion mirrors the language rejected in *Bunch*. "The Seventh District held that the decision to rebut eyewitness testimony through cross-examination rather than an expert witness is a matter of trial strategy and does not constitute ineffective assistance of counsel. . . . The court further held that Bunch's ineffectiveness claim failed because M.K.'s testimony was not the sole evidence of Bunch's identity." *Bunch* at ¶ 25.

instructions for the court to consider the motion under the appropriate legal standard articulated in *Bunch*.

{¶ 46} Arguendo, even considering Groce's petition under the standard set out in *Bunch*, 2022-Ohio-4723, I find that the trial court abused its discretion by denying Groce's petition without a hearing. I believe Groce has met his evidentiary burden entitling him to a hearing on his petition for postconviction relief.

{¶ 47} As set forth previously, when resolving a petition for postconviction relief alleging ineffective assistance of counsel, we are guided by the *Strickland* factors as framed in *Bunch*. For ease of discussion, I will quickly dispatch with the prejudice prong of our analysis. Under *Strickland*, Groce must establish that there is a "reasonable probability" that the trial counsel's failure to file a motion to suppress affected the outcome of the defendant's proceedings. *Strickland* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Typically, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. As this is a postconviction petition, however, Groce need not definitively establish whether he was prejudiced by counsel's deficient performance. Instead, we must determine whether Groce, " 'rais[ed] in his petition a triable issue of fact, supported by evidence outside the record, . . . whether that deficiency [failing to file a motion to suppress] prejudiced him.' " *Foster*, 2024-Ohio-2924, at ¶ 63, quoting *Bunch* at ¶ 37.

{¶ 48} The trial record reveals that the state relied primarily on testimony from law enforcement through images and video evidence seized from the property. Detective Lawerence E. Gauthney testified using the video evidence obtained from the DVR, which connected Groce to the illicit activity. As such, without the DVR, it is exceedingly reasonable to believe that the outcome would have been different. At the very least, Groce has met his burden by providing a triable issue of fact to warrant an evidentiary hearing regarding whether he was prejudiced as a result of counsel's failure to file a motion to suppress.

{¶ 49} The sole remaining question concerns whether the trial court's performance was deficient. *Bunch* at ¶ 37. Under *Strickland*, counsel's performance is deemed deficient when the identified acts or omissions fall "outside the wide range of professionally

competent assistance." *Strickland* at 690. Again, prior to a hearing, Groce does not need to definitively establish whether counsel's performance was deficient. Merely that "the petition must *be sufficient on its face to raise an issue whether* [Groce] was deprived of the effective assistance of counsel, and [Groce's] claim depends on factual allegations that cannot be determined by examining the record from his trial." *Bunch* at ¶ 27.

{¶ 50} In his petition, Groce argues that the trial counsel was deficient based on his failure to file a motion to suppress the video evidence. According to Groce, the video evidence obtained from the DVR fell outside the scope of the warrant. Groce supported his petition with evidence outside the record by providing the warrant and identifying gaps in Detective Gauthney's trial testimony.

{¶ 51} The Fourth Amendment to the United States Constitution requires that a warrant describe with "particularity . . . the place to be searched[] and the persons or things to be seized." The particularity requirement was in response to "general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists. The hated writs of assistance had given customs officials blanket authority to search where they pleased for goods imported in violation of the British tax laws." *Stanford v. Texas*, 379 U.S. 476, 481 (1965). The particularity requirement protects against general searches that leave to the unguided discretion of law enforcement executing the warrant the decision as to what items can be seized. *State v. Middleton*, 2024-Ohio-5172, ¶ 28 (7th Dist.), citing *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990). " 'As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " *State v. Castagnola*, 2015-Ohio-1565, ¶ 21, quoting *Marron v. United States*, 275 U.S. 192, 196 (1927). To be sure, "[t]he proscription against general warrants does not prevent the issuance of a broad and generic listing of the items to be seized if the circumstances do not allow for greater specificity." *State v. Dalpaiz*, 2002-Ohio-7346, ¶ 27 (11th Dist.). The level of specificity required can vary depending on the nature of the items to be seized. *State v. Pustelnik*, 2009-Ohio-3458, ¶ 40 (8th Dist.), citing *State v. Overholt*, 2003-Ohio-3500 (9th Dist.). "The key inquiry is whether the warrant could reasonably have described the items more precisely." *Pustelnik* at ¶ 40, citing *State v. Benner*, 40 Ohio St.3d 301, 307 (1988).

{¶ 52} The warrant provides in relevant part:

> Schedule II controlled substance, to wit: Crack-Cocaine , as described in the Ohio Revised Code; papers indicating

> occupancy and/or ownership; drug paraphernalia; drug records; drug monies and/or proceeds; weapons; other evidence of illicit drug trafficking unknown at this time.

(Emphasis omitted.) (Apr. 29, 2019 Petition to Vacate or Set Aside Jgmt., attached Warrant to Search.)

{¶ 53} The trial court denied Groce's petition finding that "[w]hile the search warrant does not specifically state the officers could seize cameras or DVR systems, it does specify 'other evidence of illicit drug trafficking unknown at this time.' " (Apr. 30, 2024 Decision & Entry at 5.)

{¶ 54} Ohio courts have consistently rejected "other evidence" catchall provisions in warrants, standing alone, to justify the seizure of evidence. *See e.g., State v. Casey*, 2004-Ohio-5789, ¶ 15 (7th Dist.) ("[s]earch warrants should not be so general as to send police officers on fishing expeditions for contraband. Nor should they simply contain the same cookie-cutter language used in every warrant"); *Dalpaiz* at ¶ 29-30 (finding the warrant authorization of "any and all evidence pertaining to violations of the drug laws of the State of Ohio; Ohio Revised Code, and all other fruits and instrumentalities of the crime at the present time unknown" was so broad that it serves as "an unacceptable impingement upon an individual's Fourth Amendment rights"); *State v. Davis*, 2000 Ohio App. LEXIS 5746, *8-9 (2d Dist. Dec. 8, 2000), citing 1 Katz & Giannelli, Criminal Law 178, Section 9.18 (1996) (concluding that "it was inappropriate for the trial court to use the catch-all phrase found in the search warrant to justify the seizure of the vehicles. Although a catch-all afterthought like the one used here, i.e., 'and any other evidence of criminal activity . . . [,]' does not transform an otherwise valid search warrant into an invalid general warrant, it 'provides no additional authority for officers executing the warrant' "). *See also State v. Napier*, 1999 Ohio App. LEXIS 1986, *5-6 (2d Dist. Apr. 16, 1999) ("The catch-all provision, 'any other contraband . . .,' standing alone, is quite broad, perhaps impermissibly so.").

{¶ 55} The state argues, *see* appellee's brief at 17, that a broad or generic description of items to be searched is " 'valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." (Further citation omitted.) *State v. Enyart*, 2010-Ohio-5623, ¶ 38 (10th Dist.), quoting *State v. Hale*, 2010-Ohio-2389, ¶ 71 (2d Dist.). The state then attempts to distinguish language from *Dalpiaz* and *Davis* contending the catchall provision is

"immaterial because the warrant specifically authorized search and seizure of drug record." (Appellee's Brief at 19.) Indeed, Ohio courts have found the use of catchall provisions does not invalidate a warrant when other provisions of the warrant support the search. "It would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well." (Internal quotation omitted.) *Casey* at ¶ 24. I agree that invalid grounds of a warrant may be properly severed from the parts that may authorize the officers to search for and seize the DVR. The problem is that the trial court made no actual finding that the seizure of the DVR fell under another provision of the warrant. The trial court expressly found the DVR evidence fell under the "other evidence" provision of the warrant then makes a passing reference that the video evidence was a "record of the drugs." (Apr. 30, 2024 Decision & Entry at 5-6.) Instead of grappling with the "other evidence" provision, the majority mooted the trial court's finding and adopted the state's argument that the seizure of the DVR system fell under the "drug records" language of the warrant. Because the "other evidence" provision is invalid, I would reverse its decision on this ground and remand for further consideration of the state's additional arguments.

{¶ 56} Even accepting that the trial court's reference to "record of drugs" amounts to a finding that the seizure of the DVR was permissible under the warrant as a "drug record," I would still conclude that the trial court abused its discretion denying Groce's petition without a hearing.

{¶ 57} The majority decision in this case has found that the DVR evidence was properly seized under the "drug records" provision of the warrant then distinguishes *State v. Villolovos*, 2019-Ohio-241 (6th Dist.) on factual grounds. The majority relies on a series of federal circuit court cases where the officers were found to have not exceeded the scope of a warrant that permitted the search and seizure of "records" on electronic devises that could reasonably contain the records in question.

{¶ 58} Preliminarily, I take issue with the majority's reliance on the cited federal cases as it creates a false equivalency between a DVR and other technologies. These cases turn largely on the facts and the nature of the technology that is the subject of the particular search. *United States v. Peters*, 92 F.3d 768 (8th Cir. 1996), *United States v. Lucas*, 932

F.2d 1210 (8th Cir. 1991), and *United States v. Reyes*, 798 F.2d 380 (10th Cir. 1986) considered whether audio cassette tapes were records under the scope of the warrants. Other Ohio courts have rejected the classification of a DVR as a "videotapes, audio cassette tapes, cellular phones, computers and related computer hardware and software." *Villolovos* at ¶ 12. These technologies present a wholly different factual inquiry than the one posed in the instant case. Instead of straining to find analogous cases through other technologies, I would focus on the analysis in *Villolovos* as it is the only case that concerns the seizure of a DVR system as a "record."

{¶ 59} Regardless, if we are going to analogize a DVR to other electronic systems, many of the cases cited by the majority are inconsistent with binding Supreme Court precedent. *See Castagnola*, 2015-Ohio-1565. In *Castagnola*, the warrant identified the offenses charged and described the objects subject to seizure from the home as "[r]ecords and documents either stored on computers, ledgers, or any other electronic recording device." *Castagnola* at ¶ 76. In relevant part, the *Castagnola* court found that the warrant lacked particularity as it permitted law enforcement to "examine every record or document on Castagnola's computer in order to find any evidence of the alleged crime." *Id.* at ¶ 84. The Supreme Court explained that "[u]nder the Fourth Amendment, these details regarding the records or documents stored on the computer should have been included in the search warrant to guide and control the searcher and to sufficiently narrow the category of records or documents subject to seizure." *Id.* at ¶ 87.

{¶ 60} Even the federal case law regarding the search for "records" on electronic devices cuts both ways. In *United States v. Payton*, 573 F.3d 859 (9th Cir. 2009), the Ninth Circuit Court of Appeals considered whether the search of a computer exceeded the scope of the warrant that allowed the search of records. The officer stated, based on his experience and training, "drug dealers maintain records of sale on their computers." *Id.* at 861. The warrant in question allowed for the search of, among other things, " '[s]ales ledgers showing narcotics transactions such as pay/owe sheets,' and '[f]inancial records of the person(s) in control of the premises.' " *Id.* at 862. The *Payton* court concluded that the search of the computer exceeded the scope of the warrant. *Id.* at 861. "There is no question that computers are capable of storing immense amounts of information and often contain a great deal of private information. Searches of computers therefore often involve a degree

of intrusiveness much greater in quantity, if not different in kind, from searches of other containers." *Id.* at 861-62.  The *Payton* court cautioned against the reading of warrants in such a broad manner writing:

> Our confidence in our conclusion is buttressed by contemplating the effect of a contrary decision. In order to uphold the search in this case, we would have to rule that, whenever a computer is found in a search for other items, if any of those items were capable of being stored in a computer, a search of the computer would be permissible. Such a ruling would eliminate any incentive for officers to seek explicit judicial authorization for searches of computers. But the nature of computers makes such searches so intrusive that affidavits seeking warrants for the search of computers often include a limiting search protocol, and judges issuing warrants may place conditions on the manner and extent of such searches, to protect privacy and other important constitutional interests.

 (Emphasis omitted.)  *Payton* at 864.

{¶ 61} In *United States v. Fulton*, 928 F.3d 429 (5th Cir. 2019), the Fifth Circuit Court of Appeals considered whether a warrant that allowed for the seizure of a "ledger" included the search of the defendant's cellphone.  *Id.* at 434.  The *Fulton* court defined " 'ledgers,' [as] a 'book . . . ordinarily employed for recording . . . transactions.' Ledger, OXFORD ENGLISH DICTIONARY (2d ed. 1989)." *Id.*  While the government conceded the warrant did not expressly include a cellphone, it posited that *United States v. Aguirre,* 664 F.3d 606 (5th Cir. 2011) held that a cellphone that is " 'used as a mode of both spoken and written communication and containing text messages and call logs, served as the equivalent of records and documentation of sales or other drug activity.' " *Fulton* at 434-35, quoting *Aguirre* at 615.  The government contended that the seizure of the cellphone was permissible because it was the "functional equivalent[] of several items listed" on the warrant.  *Id.* at 435.  The *Fulton* court rejected the government's argument stating that "[t]here is nothing in the . . . warrant suggesting that anything similar to computers or even electronics was to be seized." *Id.*  "Though a ledger can serve one of the myriad purposes of a cellphone, we do not extend the concept of 'functional equivalency' to items so different, particularly one as specific, distinguishable, and anticipatable as a cellphone." *Fulton* at 435.  Again, while I would not draw the comparison proposed by the majority, it should at

least be acknowledged that much of the majority's cases are inconsistent with *Castagnola* and conflict with case law out of other federal circuit courts.

{¶ 62} The most troubling aspect of the majority decision, though, is its rejection on *Villolovos*, the only case that involves a DVR system, on factual grounds. Implicit in the majority decision is that a DVR may fall within or outside the category of "drug records" depending on the facts of the case. The majority, however, then notes the lack of factual support in this case that was present in *Villolovos*. I find this illogical and inconsistent with the aims of R.C. 2953.21 as the majority deprives Groce of the opportunity for a hearing to develop the record necessary to meet his evidentiary burden. In any case, these factual distinctions, set out by the trial court and adopted by the majority, are largely unpersuasive and, frankly, inconsistent with the record. A brief review of *Villolovos* is instructive.

{¶ 63} In 2017, law enforcement received information from multiple informants that crack cocaine was being processed at a residence on Worthington Street in Toledo, Ohio. *Villolovos*, 2019-Ohio-241, at ¶ 2. After surveillance and a controlled drug buy through a confidential informant, law enforcement obtained a search warrant for the residence. *Id.* The search warrant authorized the search of the residence and seizure of, among other things, "drug transaction records." *Id.* at ¶ 2. Upon executing the warrant, law enforcement found numerous security cameras attached to the outside of the residence and a DVR "hooked up to a monitor in [the defendant's] bedroom." *Id.* at ¶ 3. "One of these exterior cameras was pointed in the direction of narcotics that were located outside the house, between it and the neighboring residence." *Id.* The defendant was later indicted on multiple trafficking and drug-related charges. *Id.* at ¶ 4. Counsel for the defendant filed a motion to suppress the DVR system arguing the search exceeded the scope of the warrant when they seized the equipment as the warrant made no mention of the DVR or cameras. *Id.* at ¶ 5.

{¶ 64} The trial court held a hearing regarding the motion to suppress. At the hearing, the detective testified that he believed that the DVR system fell within the confines of the warrant. *Id.* at ¶ 12. The detective, prior to the search, never observed any outside security cameras, and the informants never made him aware of the existence of security cameras. *Id.* at ¶ 10. As explained by the detective, this information would be important because it was a safety issue for the SWAT team to assist in planning their approach when

executing the search warrant. *Id.* The detective conceded he did not know what was on the DVR system at the time it was seized. *Id.* When asked how he knew the DVR system was recording the cameras located outside the house, the detective stated, "it was the only DVR that was located that was brought to his attention." *Id.* at ¶ 13. Following a hearing, the trial court granted the motion to suppress finding the warrant provided insufficient support for the seizure of the DVR and the plain view exception was inapplicable as the incriminating nature of the evidence was not immediately apparent. *Id.* at ¶ 7.

{¶ 65} On appeal, the state argued that the DVR and cameras were properly seized as they fell within the scope of the warrant and under the plain view doctrine. The Sixth District Court of Appeals rejected the state's argument explaining that "to characterize the DVR system as a 'drug transaction record,' 'computer [or] related computer hardware and software,' 'video tape,' or 'instrument, equipment, or paraphernalia * * * used to store * * * drugs' would require us to shoehorn the evidence into one of these general, ill-fitting categories. *The DVR system simply does not fit naturally into any of the general categories specified in the warrant.*" (Emphasis added.) *Id.* at ¶ 23. The *Villolovos* court found that the cameras were not just positioned on the drugs as "there were multiple cameras positioned around the perimeter of the property." *Id.* at ¶ 24. The *Villolovos* court also noted that the detective was not able to provide any specific information as to how he knew the DVR was recording the cameras. *Id.* at ¶ 25.

{¶ 66} The investigative phase of this case, prior to the execution of the warrant, is nearly identical to *Villolovos*. In both cases, there was surveillance of the property as well as the use of informants to perform controlled buys. Moreover, there is no meaningful difference, for the purposes of this appeal, between the "drug transaction records" language in the *Villolovos* warrant and "drug records" warrant provision in this case.

{¶ 67} The trial court distinguished *Villolovos* as those cameras were "attached to the outside of the house, which was or should have been known to the detective as he was completing his search warrant request. In the present case, there were no cameras attached to the outside of the house. In *Villolovos*, the DVR was not connected to the cameras, however, in the present case the DVR was attached to a monitor giving a live view of the activities in the kitchen." (Apr. 30, 2024 Decision & Entry at 5.) The trial court's analysis of *Villolovo*s, adopted by the majority decision, goes awry in many respects. First, despite

the trial court's conclusion otherwise, Detective Gauthney testified that there were multiple video cameras attached to the *inside* and *outside* of the Greenway Avenue property. Much like the exterior cameras in *Villolovos*, the Greenway house had cameras positioned on the outside of the front and rear doors used to identify individuals that might come to the door. (*See* Tr. Vol. II at 445-46; State's Ex. C-5-C-7; C-58-C-60.) There was also an additional camera discovered in the upstairs bedroom that was not yet set up. (Tr. Vol. II at 470; State's Ex. C-51.) Again, like the defendant in *Villolovos* "there were multiple cameras positioned around the perimeter of the property—not just focused on the drugs." *Id*. at ¶ 24. As aptly stated, "people use security systems to secure their property from break-ins . . . *people do not normally have security cameras to record their criminal activity*." (Emphasis added.) *Id*. at ¶ 24.

{¶ 68} The majority decision emphasizes that Fourth Amendment review looks at reasonableness based on "sufficient probability, not certainty." (Further citation omitted.) *Supra* at ¶ 32. As acknowledged by the majority decision, however, "[i]n determining whether officers executing a search warrant acted reasonably, courts must examine only those 'facts available to the officers at the time." *United States v. Phillips*, 588 F.3d 218, 227, quoting *Maryland v. Garrison,* 480 U.S. 79, 88 (1987). Here, there are many details absent from the record regarding what law enforcement knew at the time they seized the DVR. By way of example, the detective in *Villolovos* acknowledged that he did not know about the cameras before executing the warrant. While we could reasonably infer that Detective Gauthney did not know about the cameras on the front and back door prior to the search as it would be important information to discuss with the other officers before to executing the warrant, this would need to be fleshed out at a hearing. While the majority decision finds this information irrelevant, it was a major part of the calculus for the *Villolovos* court when considering whether the DVR system was a drug record under the warrant.

{¶ 69} The majority decision conflates the detective's testimony that the video surveillance system was visible on the monitors with evidence that the DVR system was recording. While we know the video monitor was active when the officers executed the warrant, we have no information as to whether the DVR was recording at the time of the seizure or, if it was, how Detective Gauthney knew it was recording at the time the DVR was

seized. State's Ex. C-29 shows the display of the three cameras on the monitor at the same time: (1) outside of the front door: (2) outside of the rear door, and (3) in the kitchen. My review of the image reveals no red light or overt indicator on the monitor that the DVR was actively recording. Detective Gauthney's testimony as to the DVR was limited to a few sentences. The detective stated that he "noticed that there was a DVR" and knew that "they usually come with hard drives that record." (Tr. Vol. II at 446.) The majority decision relies exclusively on Detective Gauthney's testimony that "obviously, they're recording." (Tr. Vol. II at 447.) Despite Detective Gauthney's conclusory testimony, there is no evidence in the record at this time to support such a claim. The majority decision's failure to bolster the detective's proclamation with *any evidence* in the record in support is telling and underscores the need for a hearing.

{¶ 70} To be clear, Detective Gauthney may have had a reasonable basis for concluding that the monitor was recording at the time of the search. We simply have no information in the record whether the DVR was connected to the cameras, whether the DVR was recording at the time of the search, how the detective concluded that incriminating footage was recorded on the DVR, or if there was other evidence that provided the basis for his seizure and viewing of the footage. This information "cannot be determined by examination of files and records of the case" warranting a hearing. *Bunch* at ¶ 23. Video monitors and a DVR system are not inherently incriminating as "people use security systems to secure their property from break-ins . . . *people do not normally have security cameras to record their criminal activity."* (Emphasis added.) *Villolovos* at ¶ 24. While we know that one of the monitors showed the activity in the kitchen, the record is devoid of any information to support the majority's conclusion that "Detective Gauthney realized that the security camera in the kitchen was *recording* the kitchen cabinets and counter." (Emphasis added.) *See supra* at ¶ 30. As "it is impossible to determine whether an attorney was ineffective in representation when the allegations of ineffectiveness appear outside the record," the General Assembly has provided a remedy through postconviction relief. *State v. Morrison*, 2004-Ohio-5724, ¶ 18 (4th Dist.). Given these evidentiary gaps, I believe a hearing on the petition is warranted.

{¶ 71} The state contends that, unlike *Villolovos*, there were no facts that the detective could have known, in advance of the search, that there was a surveillance system

in the kitchen. (Appellee's Brief at 22.) The available information in the record indicates that, like *Villolovos*, there were cameras on the outside of the house on the front and rear doors, which law enforcement could have observed. Because the video cameras were observable from outside the home, law enforcement could certainly have included that information in the warrant. Furthermore, law enforcement also employed a confidential informant to do a control buy within the residence, so it is also possible the informant observed a camera within that part of the house. The state, though, makes a fair point. The problem is that Groce never had an opportunity to ask what the detective knew or did not know regarding the surveillance system in the kitchen prior to the search. As Groce's "claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case" a hearing is required. (Internal citation and quotation omitted.) *Bunch* at ¶ 23.

{¶ 72} Because I would find that a hearing is necessary to determine whether the video evidence is outside the scope of the warrant, the state's plain view exception argument must also be addressed. Under the plain view doctrine, a warrantless seizure of incriminating evidence is permissible if "(1) the officers are lawfully positioned in a place from which the object can be plainly viewed, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object itself." (Further citation omitted.) *State v. Garrett*, 2018-Ohio-4530, ¶ 22 (2d Dist.).

{¶ 73} Ohio courts have generally found that the contents of videotapes do not fall under the plain view exception as the contents are not "immediately apparent." In *Villolovos*, Sixth District rejected the plain view argument posited by the state as the detective did not know what was on the DVR system when it was seized. *Id.* at ¶ 31. *See also State v. Mitchell*, 1988 Ohio App. LEXIS 4644, *4 (4th Dist. Nov. 9, 1988) (finding "in order to determine the incriminating nature of those tapes, the officers had to seize and then view them"); *State v. Powell*, 2000 Ohio App. LEXIS 5829, *9-10 (2d Dist. Dec. 15 2000) (concluding the camcorder and tape could not be seized under the plain view doctrine as it was not immediately apparent that the videotape inside contained evidence associated with the alleged rape and kidnapping). At this time, given the nature of the evidence seized and evidence outside the record, we cannot definitively determine whether the DVR evidence would fall under the plain view exception. I believe that further testimony

is necessary to resolve whether the incriminating nature of the DVR evidence was immediately apparent to law enforcement.

{¶ 74} The state presents several additional arguments as to the plain error exception, none of which are persuasive. The state first contends that Groce's argument that a hearing is necessary is an attempt to develop the record to substantiate his claim. (Appellee's Brief at 8.) This misses the point. While a petitioner is not entitled to a fishing expedition to attempt to find evidence, "when claims of ineffective assistance are based on evidence outside the record, *the appropriate procedure is to further develop the record through post-conviction proceedings.*" (Emphasis added.) *Morrison*, 2004-Ohio-5724, at ¶ 18. Because the trial record did not directly address the plain view exception, we have no way of knowing how or why the incriminating nature of the DVR evidence was "immediately apparent" to the detective without a hearing. The state also argues that the Supreme Court found that the "appellees and Groce knew about the camera in the kitchen overlooking the drug-preparation and sales area and took pains to adjust it to capture the kitchen activity, presumably as a precaution against employee theft." *State v. Dent*, 2020-Ohio-6670, ¶ 26.[2] This may be true, however, there is no evidence in the record that law enforcement, before viewing the footage, knew the DVR would provide such evidence. At the very least a hearing is necessary to resolve these gaps in the record. Finally, the state dedicates a portion of its brief to examining what the DVR footage revealed as to Groce's and his codefendants' criminal dealings. (Appellee's Brief at 19-20.) Again, while this very well may be true, the results of a search may not be retroactively rationalized by the results. "An unlawful search cannot be justified by what is found." *Bock v. Cincinnati*, 43 Ohio App. 257, 262 (1st Dist. 1931). Therefore, Groce has raised "in his petition a triable issue of fact, supported by evidence outside the record," that, if true, set out a prima facie case that he was deprived of his constitutional right to the effective assistance of counsel warranting a hearing in this case. *Bunch* at ¶ 37.

{¶ 75} I underscore that I have no opinion on whether Groce's petition might ultimately have merit once the trial court conducts an evidentiary hearing. My concern is

---

[2] While the majority decision accurately sets out the procedural history of this case, it should also be noted that the Supreme Court took up a related case involving Groce's codefendant, Alvin C. Dent. While the above quotation concerned Dent, given the overlap in subject matter, the findings are certainly relevant to the present case.

not whether Groce's claim has merit but on the adequacy of the process leading up to a decision on his claim. *See Bunch* at ¶ 51. "The postconviction-petition process ensures the integrity of convictions that were correctly entered in addition to ferreting out wrongful convictions. A wrongful conviction achieves justice for no one, and a confirmation that a petitioner was rightfully convicted only adds to our confidence in the system." *Id.*

{¶ 76} In sum, I find that the trial court applied the wrong legal standard for postconviction review, and therefore, would reverse and remand the matter for it to apply the standard articulated in *Bunch*. I also find the trial court erred in its determination that the "other evidence" provision of the warrant applied to the DVR video evidence in this case. Finally, I believe there is a triable issue of fact based on gaps in the record that the "drug records" provision of the warrant covers the DVR system. The "record does not on its face disprove the petitioner's claim" as there are noticeable gaps in the factual record as to what law enforcement knew at the time of the seizure. *Bunch* at ¶ 24. As set forth previously, Groce is only required to show there is a "triable issue of fact, supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him." *Bunch* at ¶ 37. Groce has done precisely that and is entitled to a hearing. Because the majority does not agree, I respectfully dissent.

_____